**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SECURITY LIFE OF DENVER INSURANCE COMPANY,<br>　　　　　　　　　　Interpleader Plaintiff,<br><br>　　　　v.<br><br>ISAAC HERSKO a/k/a YITZCHOK SHLOMO HERSKO, and<br><br>BARRY HERSKO a/k/a ZEV DOV HERSKO a/k/a BAREL HERSKO, Individually and as  Trustee of THE FRENKEL FAMILY TRUST Dtd 12/26/2007<br>　　　　　　　　　　Defendants;<br><br>*and*<br><br>BARRY HERSKO a/k/a ZEV DOV HERSKO a/k/a BAREL HERSKO, as Trustee of THE FRENKEL FAMILY TRUST Dtd 12/26/2007,<br>　　　　　　　　　　Counterclaim Plaintiff,<br>　　　　v.<br><br>SECURITY LIFE OF DENVER INSURANCE COMPANY,<br>　　　　　　　　　　Counterclaim Defendant;<br>*and*<br><br>BARRY HERSKO a/k/a ZEV DOV HERSKO a/k/a BAREL HERSKO, Individually and as  Trustee of THE FRENKEL FAMILY TRUST Dtd 12/26/2007,<br>　　　　　　　　　　Crossclaim/Third Party Plaintiff;<br>　　　　v.<br><br>ISAAC HERSKO a/k/a YITZCHOK SHLOMO HERSKO,<br>　　　　　　　　　　Crossclaim Defendant, and<br><br>MORRIS HERSKO and ABRAHAM RAAB, as Trustee of THE FRENKEL FAMILY TRUST Dtd 12/26/2007,<br>　　　　　　　　　　Third Party Defendants. | Case No.:  1:24-cv-5215<br><br>Judge Hector Gonzalez<br><br>**DEFENDANT BARRY HERSKO'S ANSWER, COUNTERCLAIMS, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT** |

Defendant Barry Hersko ("Barry"), Individually and as Trustee of the Frenkel Family Trust, by and through his attorneys, Blank Rome LLP, hereby files his Answer to Plaintiff

Security Life of Denver Insurance Company's ("SLD Insurance") Complaint for Interpleader Relief ("Complaint"):

## ANSWER TO SLD INSURANCE'S COMPLAINT FOR INTERPLEADER RELIEF

### Parties[1]

1.    Admitted.

2.    Admitted.

3.    Admitted.

### Jurisdiction and Venue

4.    The allegations in Paragraph 4 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry incorporates his responses to Paragraphs 1, 2, and 3 and admits that the amount in controversy exceeds $75,000, exclusive of interest and costs. Barry denies all remaining allegations in Paragraph 4.

5.    The allegations in Paragraph 5 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry incorporates his responses to Paragraphs 1, 2, and 3. Barry denies all remaining allegations in Paragraph 5.

### Factual Background

6.    Admitted, including that a copy of Complaint **Exhibit A** was submitted to SLD Insurance.

7.    Admitted.

8.    Admitted.

9.    Admitted, except denied as to the completeness of SLD Insurance's copy of the Policy attached as **Exhibit B**.

---

[1] Solely for the convenience of the Court and the Parties, headings follow those in the Complaint.

10.     Barry admits that premium payments were made to SLD during the life of the policy and otherwise denies all allegations in Paragraph 10.

11.     Admitted on information and belief.

12.     Barry denies the allegations in Paragraph 12 of the Complaint to the extent they constitute legal conclusions or purport to summarize, characterize or paraphrase the terms of a written document, which speaks for itself. To the extent a further response is required, Barry denies all remaining allegations in Paragraph 12.

13.     Admitted that Isaac and Barry have been involved in litigation in a case styled *Hersko v. Hersko*, Index. No. 520492/2021 in New York Supreme Court, Kings County and otherwise deny the remaining allegations in Paragraph 13.

14.     Denied

15.     Barry is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 15. Barry therefore denies all allegations in Paragraph 15. Barry further denies the allegations in Paragraph 15 of the Complaint to the extent they purport to summarize, characterize or paraphrase the terms of a written document, which speaks for itself. To the extent a further response is required, Barry denies all remaining allegations in Paragraph 15.

16.     Barry is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 16. Barry therefore denies all allegations in Paragraph 16. Barry further denies the allegations in Paragraph 16 of the Complaint to the extent they purport to summarize, characterize or paraphrase the terms of a written document, which speaks for itself. To the extent a further response is required, Barry denies all remaining allegations in Paragraph 16.

17.     Barry is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 17. Barry therefore denies all allegations in Paragraph 17. Barry further denies the allegations in Paragraph 17 of the Complaint to the extent they purport to summarize, characterize or paraphrase the terms of a written document, which speaks for itself. To the extent a further response is required, Barry denies all remaining allegations in Paragraph 17.

18.     Barry is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 18. Barry therefore denies all allegations in Paragraph 18.

19.     Admitted, including that **Exhibit D** is a copy of the Order dated June 24, 2024.

20.     Admitted, including that Barry submitted a copy of **Exhibit E** to SLD Insurance.

21.     Admitted, including that Barry submitted a copy of **Exhibit F** to SLD Insurance.

22.     Barry is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 22. Barry therefore denies all allegations in Paragraph 22.

23.     Admitted.

24.     Admitted.

25.     Barry is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 25. Barry therefore denies all allegations in Paragraph 25.

### Count One – Interpleader Relief

26.     In response to SLD Insurance's stated incorporation of Paragraphs 1-25 of its Complaint, Barry incorporates by reference Paragraphs 1-25 this Answer as though fully set forth herein. To the extent a further response is required, Barry denies all remaining allegations in Paragraphs 1-26 of the Complaint.

27.    The allegations in Paragraph 27 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry denies all allegations in Paragraph 27.

28.    The allegations in Paragraph 28 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry denies all allegations in Paragraph 28.

29.    The allegations in Paragraph 29 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry denies all allegations in Paragraph 29.

30.    The allegations in Paragraph 30 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry denies all allegations in Paragraph 30.

31.    The allegations in Paragraph 31 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry denies all allegations in Paragraph 31.

32.    The allegations in Paragraph 32 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry denies all allegations in Paragraph 32.

33.    The allegations in Paragraph 33 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry denies all allegations in Paragraph 33.

34.    Admitted that SLD Insurance filed a Motion to Deposit Interpleader Funds on August 7, 2024, after filing the Complaint and before Barry's undersigned counsel appeared in

this action or filed this Answer. To the extent a further response is required, Barry denies all remaining allegations in Paragraph 34.

35.     The allegations in Paragraph 35 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Barry denies all allegations in Paragraph 35.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The claims in the Complaint are barred, in whole or in part, by reason of the doctrine of waiver or estoppel.

### THIRD AFFIRMATIVE DEFENSE

The claims in the Complaint are barred, in whole or in part, by reason of the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Barry incorporates by reference, as if fully set forth herein, each and every legal defense, asserted in any pleading in this action which is applicable to and supportive of Barry's defense in this action and is not otherwise set forth herein.  Barry incorporates by reference each and every allegation in all of its Cross-Claims, counterclaims, and third party claims as though they were asserted in full here as affirmative defenses.  Barry reserves the right to seek leave of the Court to amend this Answer and/or add affirmative defenses that become known to him through discovery and the course of litigation.

## COUNTERCLAIMS AGAINST SLD INSURANCE

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Barry, as Trustee of the Frenkel Family Trust ("Trust"), asserts the following counterclaim ("Counterclaim") against Security Life of Denver Insurance Company ("SLD Insurance") and in support thereof alleges as follows:

### Jurisdiction and Venue

1.      These Counterclaims are filed pursuant to Fed. R. Civ. P. 13 and 28 U.S.C. § 1332.

### Background Facts

2.      The Trust applied for and, in March 2008, purchased the Policy insuring the life of Eva Frenkel for the initial stated "Death Benefit" of $6,250,000.

3.      A true and correct copy of the Policy is attached hereto as **Exhibit 1**.

4.      The Trust is and always has been the owner of the Policy.

5.      The Trust is and always has been the beneficiary of the Policy.

6.      Barry is the current Trustee of the Trust.

7.      Between March 1998 and May 2024, SLD Insurance received over $11 million in net premium payments to keep the Policy in full force and effect during Eva Frenkel's life.

8.      Pursuant to the Policy, a "minimum monthly premium no lapse provision applie[d] during the first 10 policy years." Policy at 1166-NJ-3/04 p. 4.

9.      Beginning in March 2018, at the Policy's ten-year anniversary, SLD Insurance significantly raised the premiums that it was charging the Trust for the Policy.

10.     In June 2018, the Trust formally requested explanation from SLD Insurance of the increases to the premium, including the "Cost of Insurance" ("COI") rates and "grace amounts" charged, as well as of the discrepancies between the actual COI rates and the projected COI rates

7

disclosed to the Trust when it purchased the Policy. SLD Insurance failed to provide a satisfactory explanation or supporting documentation requested by the Trust at that time.

11.     Indeed, SLD Insurance failed to provide the Trust a satisfactory or meaningful explanation for the premium increases or provide the requested documentation at any time from March 2018 to March 2024, despite numerous letters and calls by representatives of the Trust.

12.     As a result, on March 28, 2024, Trust representatives made a Consumer Complaint against SLD Insurance with the New Jersey Department of Banking and Insurance ("NJDOBI"), requesting a "comprehensive response to our request so [the Trust] can assess why the premiums are more expensive than illustrated" at the time the Policy was issued.

13.     Neither NJDOBI nor SLD Insurance provided the Trust with the documentation that the Trust requested. Indeed, in its May 16, 2024 response to the Consumer Complaint, NJDOBI admitted that SLD Insurance's "annual illustration certification filing to the states, as of August 31st, 2020, [states] they no longer illustrate this product and cannot provide an illustration projecting the premiums and values based on the policy's current non-guaranteed charges."

14.     On information and belief, SLD Insurance understood at all relevant times that language in the Policy and policies like it defining the policy as a "nonparticipating" policy meant not only that the policyholder was not eligible to "participate in [SLD Insurance's] surplus earnings," but also, in the words of an internal SLD Insurance memo made public in class action litigation, that "the Company may not attempt to recoup past losses from the policyholder."

15.     Nevertheless, on information and belief based on information made public in class action litigation, SLD Insurance improperly passed business losses on to such "nonparticipating" policyholders through improper cost of COI premium increases.

16.    On information and belief, based on actuarial analysis completed without the benefit of the supporting documentation that the Trust repeatedly has requested and that is in the exclusive possession of SLD Insurance and/or NJDOBI, the premiums that SLD Insurance charged the Trust for the Policy from March 2018 to May 2024 were in excess of that permitted by the Policy and law, whether or not the "nonparticipating" provisions barred premium increases to cover SLD Insurance's business losses.

17.    Upon information and belief, Eva Frenkel died on June 8, 2024, at 98 years of age.

18.    The Policy requires that "[s]ettlement of death claim will be made within 60 days after receipt of due proof of death…." *See* Policy at 1166-NJ-3/04 p. 8.

19.    On information and belief, SLD Insurance received due proof of Eva Frenkel's death no later than June 27, 2024. *See* Complaint Ex. E.

20.    As of the sixtieth (60) day after that date, August 26, 2024, SLD Insurance not only had not settled the death claim with its policyholder but instead had filed this suit, sought leave to deposit the death benefit with the Court, and in fact deposited $6,212,779.39 of the face value $6,250,000 death benefit with the Court instead of paying that amount to its policyholder.

### COUNT ONE (Breach of Contract – Failure to Pay Death Benefit)

21.    Barry incorporates the allegations in paragraphs 1 through 20 as if fully restated here.

22.    The Policy is an enforceable contract.

23.    All conditions precedent to payment of the Policy's death benefit are satisfied, including, without limitation, the death of the insured, Eva Frenkel.

9

24.     The terms of the Policy unambiguously require SLD Insurance to pay the Policy's death benefit to the Trust.

25.     SLD Insurance does not dispute that the Policy unambiguously requires SLD Insurance to pay the Policy's death benefit to the Trust, through its Trustee.

26.     Isaac admits he is not a direct beneficiary of the Policy.

27.     SLD Insurance nevertheless has failed to pay the Policy's death benefit to the Trust, instead depositing those funds with the Court.

28.     SLD Insurance has breached its express contractual obligations under the Policy and its duty of good faith and fair dealing to the Trust by, among other things, delaying and/or refusing payment of the Policy's death benefit to the Trust.

29.     As a result of SLD Insurance's breach of contract, the Trust and Barry as its Trustee have sustained substantial damages including the amount of the Policy's death benefit and, absent specific performance by SLD Insurance of its contractual agreement pursuant to the Policy to pay the Policy's death benefit to the Trust, will continue to incur further damages.

### COUNT TWO (Breach of Contract – Excess Premium Charges)

30.     Barry incorporates the allegations in paragraphs 1 through 29 as if fully restated here.

31.     The Policy is an enforceable contract.

32.     SLD Insurance has breached its express contractual obligations under the Policy by, among other things, charging premiums in excess of what is permitted by the Policy and law.

33.     SLD Insurance has breached its duty of good faith and fair dealing to the Trust by, among other things, charging premiums in excess of what is permitted by the Policy and law and

by failing to provide the Trust an in force illustration, policy data, and other information requested by the Trust to further assess the amount of such premium overcharges.

34.    As a result of SLD Insurance's breach of contract, the Trust and Barry as its Trustee have sustained substantial damages including the amount of premiums paid in excess of what is permitted by the Policy and law.

### COUNT THREE (Declaratory Judgment)

35.    Barry incorporates the allegations in paragraphs 1 through 34 as if fully restated here.

36.    The Policy is an enforceable contract.

37.    All conditions precedent to payment of the Policy's death benefit are satisfied, including, without limitation, the death of the insured, Eva Frenkel.

38.    The terms of the Policy unambiguously require SLD Insurance to pay the Policy's death benefit to the Trust.

39.    SLD Insurance does not dispute that the Policy unambiguously requires SLD Insurance to pay the Policy's death benefit to the Trust, through its Trustee.

40.    Isaac admits he is not a direct beneficiary of the Policy.

41.    SLD Insurance nevertheless has failed to pay the Policy's death benefit to the Trust, instead depositing those funds with the Court.

42.    An actual controversy of a justiciable nature presently exists between SLD Insurance and the Trust regarding the rights and responsibilities of the parties to the Policy in connection with the Policy's death benefit. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

### **PRAYER FOR RELIEF**

WHEREFORE, Barry requests the following relief:

a. On Count I, judgment requiring SLD Insurance specifically to perform its contractual agreement pursuant to the Policy to pay the Policy's death benefit to the Trust, or absent such performance judgment awarding the Trust, through Barry as its Trustee, damages for breach of contract including the Policy's full death benefit;

b. On Count II, judgment awarding the Trust, through Barry as its Trustee, damages for breach of contract in an amount to be proved at trial including the amount by which the Trust has been overcharged for premiums since March 2018;

c. On Count III, judgment declaring that the $6,212,779.39 deposited by SLD Insurance in the Court's registry must be paid to the Trust, through Barry as its Trustee, together with any income generated from investment of those funds during the period of deposit and without any offset for SLD Insurance's fees and costs in this lawsuit;

d. Interest;

e. Attorneys' fees and expenses;

f. Any and all other relief to which Barry may be entitled.

## CROSS-CLAIMS AGAINST DEFENDANT ISAAC HERSKO

Pursuant to Rule 13(g) of the Federal Rules of Civil Procedure, Barry, individually and as Trustee of the Trust, asserts the following Cross-Claims ("Cross-Claims") against Defendant Isaac Hersko a/k/a Yitzchok Shlomo Hersko ("Isaac") and in support thereof alleges as follows:

## PRELIMINARY STATEMENT

1.     Isaac seeks to seize upon his younger brother's assets after decades of failing to assert any rights to such assets, contribute to expenses to acquire or maintain such assets, or in any way act as though he was a "partner" or had joint interests in such assets.

2.     The affirmative claims in this case were commenced over Isaac's claims to have some interest in participating in distributions from Trust[2] which is the beneficiary of the Policy.

3.     Isaac has not asserted any claim that he is a beneficiary of the Trust.

4.     Isaac instead asserts the right to participate in proceeds from the Trust based on an escrowed religious law instrument called a "Shtar Hoda'ah" (the "Shtar")[3] that was drafted by a practitioner of Jewish law, Rabbi Aron Benzion Mandel ("Rabbi Mandel"), pursuant to Jewish law.

5.     The term *Shtar Hoda'ah* is Rabbinic Hebrew that translates to "Document of Confession."

6.     The Shtar is not a valid "partnership agreement" at all but rather an escrowed religious instrument setting out a contingent future interest under principles of Jewish law, the framework under which Rabbi Mandel drafted it.

---

[2] All capitalized terms not otherwise defined have the same meaning as defined in the Counterclaims set forth in this pleading.

[3] A copy of the Shtar, with Rabbi Mandel's written objection and a certified translation proffered by Isaac after its production, is attached as **Exhibit 2**.   Barry reserves all rights with respect to the translation.

7.    For the following reasons, which are presented in greater detail below, Barry individually and in his capacity as Trustee is entitled to a declaration that the Shtar is not enforceable as a "partnership agreement" between Isaac and Barry and that Isaac has no ownership interest in the Policy or Proceeds:

a.    The Shtar, as an instrument that requires the interpretation and application ecclesiastical doctrines (*i.e.* Jewish law) for its enforcement, may not be enforced in United States courts under the Establishment Clause of the U.S. Constitution.

b.    The Shtar is not an enforceable secular law instrument; it would not be a valid "partnership agreement" because the condition-precedent for release from escrow was never met, there was a lack of consideration and other material terms to qualify for formation; and it does not qualify as a valid confession of judgment under New York law, and the owners of the properties are not signatories to the agreement.

c.    The Shtar would also be unenforceable in any event because it was procured by fraud and under duress, as Isaac induced Barry to have the Shtar drafted and escrowed with Rabbi Mandel based on misrepresentations that he was terminally ill with cancer and was going to die imminently in 2016.  Barry learned years later that these statements were false.

**JURISDICTION AND VENUE**

8.    This Court has jurisdiction over the Cross-Claims pursuant to 28 U.S.C. § 1331 because this matter arises under the United States Constitution; and under 28 U.S.C. § 1367 because the Cross-Claims are so related to Plaintiff's claim that they form part of the same case or controversy under Article III of the United States Constitution.

14

9. The Cross-Claims arise out of the same transaction, occurrence, or series of transactions or occurrences as Plaintiff's claim: namely, the transactions that dictate the ownership of the Policy and Proceeds.

10. Venue lies in this Court under 28 U.S.C. § 1391 because all defendants are, upon information and belief, New York residents and Barry is a resident of this District.

11. Venue also lies under 28 U.S.C. § 1391 because a substantial part of the events or omissions, including negotiation and execution of Shtar, giving rise to these Cross-Claims occurred in Brooklyn, New York.

## A. Isaac Claims an Interest in the Policy or Proceeds Based on a Religious Instrument

12. In a June 11, 2024, letter, Isaac's counsel advised Plaintiff SLD Insurance that "Isaac is the beneficiary of the life insurance policy" and there was a dispute with "the trustee of the Trust" over distributions following the death of Ms. Frenkel.

13. Plaintiff thereafter commenced this action.

14. In his initial Fed. R. Civ. Proc. 26 disclosures in this action, Isaac asserts a claimed interest in the Policy Proceeds allegedly arising from a right under the Shtar (which he characterizes as a September 2016 "partnership agreement" with Barry).

15. As set forth below, the Shtar is not an enforceable "partnership agreement".

## B. Barry Agreed to Create and Escrow the Shtar as a Conditional Jewish Law Instrument in 2016, When He Was Told that Isaac Was Going to Die <u>Imminently To Provide Emotional Comfort to His Brother</u>

16. In September 2016, Isaac's son Morris Hersko ("Morris") called Barry in a panic to tell him that Isaac had a fatal and fast-acting cancer and only a few weeks to live. Barry was in shock upon hearing that his older brother, whom he loved, was dying.

15

17.    Morris told Barry that Isaac was very upset that his money was tied up in contracts involving homeless shelters where the City of New York was not making its promised payments. Morris wanted to find a way to provide Isaac with some peace of mind and asked for Barry's assistance.

18.    Barry and Isaac are devout Jews and often consult with rabbis about religious and life matters.

19.    Rabbi Mandel is a highly respected rabbinic legal authority in Barry and Isaac's community.

20.    Rabbi Mandel is not a licensed attorney and does not practice law.

21.    Barry agreed to go to Rabbi Mandel on an urgent basis to draft a Jewish law document that would ease Isaac's emotional stress during his final days, a document which could not be released without the prior consent of Barry and other parties to the document.

22.    Barry approached Rabbi Mandel to create the document, and there was no negotiation of the document.

23.    Rabbi Mandel drafted the Shtar in Rabbinic Hebrew, which is different than conventional modern Hebrew and is typically reserved for Rabbinic "responsa" (a compilation of written responses by Jewish law authority on matters of Jewish law) and other writings of Jewish law.

24.    At the top of the Shtar is the Aramaic acronym for "*besiyata dishmaya*," a phrase meaning "with heavenly assistance" written as a matter of course at the top of Jewish religious texts.   The Shtar's heading sets out the Jewish calendar date and no English date.

25.    The Shtar refers in multiple locations to halacha (Jewish law) and the *Shulkhan Arukh*, the seminal Jewish legal code from the 1500s.

16

26. Throughout its text, the Shtar refers to Talmudic and Jewish law concepts, such as "*le-faniha be-alma*," an obscure concept referenced in the Talmud at Bava Kamma 103a and Yevamot 115b, which would only be intelligible to readers fluent in analyzing sophisticated Jewish legal sources.

27. Per Isaac's translation, the Shtar provided that certain Brooklyn properties were in corporations that were in Barry's name and that "[f]or the time being, for reasons known to both parties, the properties shall remain formally as is, but G-d willing, when the aforementioned reason is nonexistent, Party A may then demand that he be added formally to the name of the corp."

28. The Shtar also referred to certain other assets, including a statement that "[b]oth of the aforementioned parties have investments in life insurances on other people, and only [Barry] is the representative for the trust. However, he confesses and declares that [Isaac] is an absolute and equal partner in all of these investments, part for part, without any preference to either of them over the other."

29. The Shtar did not identify any consideration that Isaac provided or that the Barry Parties received in exchange for a 50% "partnership interest" in the Properties or other assets.

30. The Shtar provided that it would remain in escrow with Rabbi Mandel until released by agreement of all parties.

31. The Shtar further provided that the parties "committed to the foregoing via a binding procedure performed with an halachically acceptable garment for binding procedures[.]"

32. The Shtar has no secular equivalent, does not contain the terms found in traditional New York partnership or other legal agreements, does not recite any consideration,

17

and (pursuant to Jewish law) was to be held in escrow and not to become effective unless Barry approved its release, which he never did.

33.    After drafting the Shtar, Rabbi Mandel thereafter maintained it in escrow.

### C. In 2020, Barry Discovered that Isaac Was Lying about His Illness, Leading to a Confrontation and a Contemplated Beit Din Proceeding

34.    Although Isaac told Barry that he was ill with terminal cancer in 2016 prior to the execution of the Shtar, over the following months and years Isaac's condition did not change.

35.    Isaac continued to work in Barry's office and told Barry he was in treatment for cancer.  Isaac would tell Barry he was leaving the office to get chemotherapy but would return a short time later as though nothing had happened.

36.    In late 2020, Barry's sister, Miriam Herbst, called Barry after a visit to her doctor, whom Isaac had said he was also seeing.   Miriam asked the doctor about Isaac's health and was told that Isaac did not have cancer.

37.    Barry was horrified to learn that Isaac had lied to him about the cancer diagnosis and about the continuing treatments.

38.    Barry confronted Isaac.

39.    The confrontation turned hostile, and Barry thereafter denied Isaac further access to his office.

40.    In the aftermath, Isaac told Barry that he was going to sue him in connection with the Shtar, and Isaac and Barry discussed a Jewish rabbinical proceeding before a *beit din*.

41.    Isaac initially agreed to *beit din* but after he was instructed to post a $10 million bond with the *beit din*, reneged at the eleventh hour and sued in secular court in Kings County instead.  Isaac continues to assert a "partnership" in hundreds of millions of dollars of real property based on the disputed Shtar, which is an ongoing controversy.

42.     Rabbi Mandel produced the Shtar by court order but without the consent of the parties.   In his objection, Rabbi Mandel stated that he was producing the Shtar pursuant to court order but that "[s]uch production is being made over Mandel's objection that the attached document was to be released by Mandel only upon the express authorization of all of Barry Hersko, Isaac Hersko, Moshe Aharon Hersko, and Yitzchok Shlomo Hersko, which authorization has not been received by Mandel."

### D. Shtar  Jewish Law Instrument Whose Enforcement Requires Analysis of Jewish Law Principles and Full Consideration of Rabbi Mandel's Testimony.

43.     In his initial disclosures in this action, Isaac invokes the Shtar as his basis for claiming an indirect interest in the Policy or Proceeds, referring to it as "[t]he September 13, 2016, written agreement between Isaac and Barry."

44.     The Shtar must be interpreted under the Jewish law framework in which it was drafted.

45.     Under Jewish law principles, when parties engage a *to'en* [a practitioner of Jewish law like Rabbi Mandel] to draft a document in rabbinic Hebrew, ***that document should be interpreted pursuant to principles of Jewish law***.

46.     When Isaac and Barry engaged in commercial transactions outside of religious practices involving both of them, they engaged secular, licensed, attorneys and signed English language secular instruments.

47.     Pursuant to Jewish law, the Shtar was a statement of a conditional and contingent future interest.

48.     Further, under Jewish law, extrinsic evidence is considered as to the meaning and effect of Jewish law instruments, with the testimony of the escrow agent given particular deference.

49.    The extrinsic evidence here, including the testimony of the escrow agent Rabbi Mandel, demonstrates that the Shtar was not intended to become effective, and under Jewish law was not to become effective, unless voluntarily released from escrow.

## FIRST CROSS-CLAIM AGAINST ISAAC
### Declaratory Judgment (28 U.S.C. § 2201)

50.    Barry incorporates the allegations in paragraphs 1 through 49 of these Cross-Claims, the allegations in his Answer and Counterclaim above, and the allegations of his Third-Party Complaint below, as if fully restated here.

51.    An actual, live, and justiciable controversy has arisen and continues between Barry and Isaac as to the enforceability and meaning of the Shtar, as well as Isaac's right to claim any interest to the Policy Proceeds or interests in distributions from the Trust.

52.    The Shtar is a religious document.

53.    The Establishment Clause of the First Amendment of the United States prohibits courts from interpreting or enforcing religious documents, except to the extent that purely "neutral principles of law" may be applied. See Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich, 426 U.S. 696, 709 (1976) ("civil determination of religious doctrine" prohibited under the First Amendment); Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 447 (1969) (the Establishment Clause "leaves the civil courts no role in determining ecclesiastical questions in the process of resolving property disputes."); see also Avitzur v. Avitzur, 58 N.Y.2d 108, 114 (1983) ("judicial involvement in matters touching upon religious concerns has been constitutionally limited… and courts should not resolve such controversies in a manner requiring consideration of religious doctrine").

54.     Here, the Shtar cannot be enforced or interpreted without evaluating and applying Jewish legal principles.

55.     Isaac has taken the position that the Shtar is valid and may be enforced in secular court and that he is entitled to an ownership interest in the Policy or Proceeds based on the Shtar.

56.     Under 28 U.S.C. § 2201(a), this Court is vested with the authority to declare the rights and other legal relations of any interested party within its jurisdiction in a case of actual controversy within its jurisdiction.

57.     Barry seeks and is entitled to a declaration that:

   a. The Shtar is void, voidable and unenforceable by U.S. courts under the Establishment Clause of the First Amendment to the United States Constitution. U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof….").

   b. Alternatively, the Shtar is void, voidable, and/or otherwise unenforceable because of one or more of the following:

      i. it was escrowed, its voluntary release from escrow with Barry's consent was a precondition to its enforceability, and Barry never consented to its release;

      ii. it fails for lack of consideration, lack of materiality, and definiteness;

      iii. it fails to comply with the statutory requirements of enforceability governing New York "confessions" under the CPLR;

      iv. it is not any other type of instrument that is recognized by and enforced under secular law;

      v. its drafting, signing, and escrow were procured by fraud;

21

vi.  its drafting, signing, and escrow were procured under duress;

vii.  the necessary parties to any agreement governing real property are not parties or signatories to the document.

c.  Because the Shtar is unenforceable, Isaac has no interest in the Policy or Proceeds.

d.  Even if the Shtar is enforceable, Isaac is not a beneficiary of the Policy.

e.  The Trust is entitled to 100% of the Proceeds of the Policy.

f.  The Trust shall administer and distribute the funds held in Trust, including, without limitation the Proceeds, as directed by Barry as Trustee, after first repaying all funds advanced to the Trust to pay for Trust expenses during in its existence.

g.  Isaac is entitled to no distributions or payments from the Trust.

58.    The above issues implicate a substantial controversy between Barry and Isaac, who have adverse legal interests related to the immediate issue of Isaac's claimed rights under the Shtar and in connection with the Trust, warranting the issuance of a declaratory judgment.

59.    A declaratory judgment in this case would serve a useful purpose in clarifying and settling the legal issues involved regarding the legal rights of Barry and Isaac as they relate to the Shtar and the Policy and Proceeds, and it would finalize the controversy and offer relief from uncertainty.

60.    Barry, individually and as Trustee of the Trust, seeks a declaration on the terms set forth herein.

## SECOND CROSS-CLAIM AGAINST ISAAC
**Tortious Interference**

61.	Barry, in his capacity as Trustee of the Trust, incorporates the allegations in paragraphs 1 through 60 of these Cross-Claims, the allegations in his Answer and Counterclaim above, and the allegations of his Third-Party Complaint below, as if fully restated here.

62.	Barry asserts this claim for tortious interference against Isaac in his capacity as Trustee of the Trust.

63.	By sending the June 11, 2024, letter to Plaintiff through his counsel, Isaac tortiously interfered with the Policy.

64.	The Policy is a valid contract between the Trust and SLD Insurance.

65.	Isaac knew of the Policy, as is it the subject of his letter.

66.	By sending the letter, Isaac intentionally procured SLD Insurance's breach of the Policy without justification.

67.	Isaac knew that the Trust was the sole beneficiary of the Policy and that was not the beneficiary of the Policy.

68.	Thus, it was unquestionable that SLD Insurance had the contractual obligation under the Policy to pay the death benefit to the Trust.

69.	Nonetheless, in a strategic effort to apply financial leverage against Barry, Isaac contacted SLD Insurance (a party Isaac had no contractual relationship with) in an intentional attempt to undermine the Trust's unquestionable status as sole beneficiary of the Policy.

70.	Isaac, acting through his counsel Yair Bruck, misrepresented to SLD Insurance Isaac's status under the Policy asserting a right as a "*Isaac is the beneficiary of the life insurance policy*" even though Isaac and Mr. Bruck at no time had any good faith reason to believe that Isaac was a direct beneficiary of the Policy itself.

71.    Isaac had no justification for this communication and misrepresentation to SLD Insurance.

72.    Isaac's letter resulted in SLD Insurance refusing to pay the Trust, an actual breach of the Policy as outlined in Barry's Counterclaim above (incorporated by reference as if fully set forth herein).

73.    The Trust sustained damages as a result of the breach, including by being deprived of the death benefit and by incurring costs in its instant dispute with SLD Insurance, and in connection with defending against Isaac's failed attempts to attach the proceeds directly.

## **PRAYER FOR RELIEF**

WHEREFORE, Barry requests the following relief against Isaac:

a.  On the First Cross-Claim, a declaratory judgment as set forth in Paragraph 57 above, which is incorporated by reference as if fully set forth herein;

b.  On the Second Cross-Claims, damages for tortious interference in an amount to be proved at trial;

c.  Interest;

d.  Attorneys' fees and expenses;

e.  Any and all other relief to which Barry may be entitled.

## **THIRD-PARTY COMPLAINT AGAINST MORRIS HERSKO AND ABRAHAM RAAB**

Pursuant to Rules 14, 19, and 20 of the Federal Rules of Civil Procedure, Barry individually and as Trustee of the Trust, asserts the following third-party claim ("Third-Party

Claim") against additional defendants Morris Hersko ("Morris") and Abraham Raab ("Raab") and in support thereof alleges as follows:

1. Barry incorporates the allegations in in his Answer, Counterclaim, and Cross-Claims as if fully restated here.

2. Morris is an individual who upon information and belief resides at 1963 63rd St., Brooklyn, NY 11204.

3. As set forth below, Morris purchased an assignment of all or part of a beneficiary interest in the Trust from Eva Frenkel's son and Trust beneficiary Herman Frenkel.

4. Raab is an individual who upon information and belief resides at 1449 37th St, Brooklyn, NY 11218.

5. Raab initially served as Co-Trustee for the Trust alongside Barry.

6. Personal jurisdiction over Morris and Raab exists and venue is proper because they are both, upon information and belief, residents of Brooklyn, New York.

7. The Court has jurisdiction over this Third-Party Claim under 28 U.S.C. § 1367, because this Third-Party Claim is so related to Plaintiff's claim that they form part of the same case or controversy under Article III of the United States Constitution.

8. Morris and Raab are both named as additional parties to this action because they are persons with an actual and/or potential interest in the property rights to be determined in this action, specifically the Trust.

9. In the absence of Morris and Raab, the court cannot accord complete relief among the existing parties as to ownership rights in the Policy and Proceeds, and their joinder is therefore required under Rule 19 of the Federal Rules of Civil Procedure.

10.    Additionally, this Third-Party Claim against Morris and Raab arises out of the same transaction, occurrence, or series of transactions or occurrences as Plaintiff's claim: namely, the transactions that dictate the ownership of the Policy and Proceeds, rendering their joinder proper under Rule 20 of the Federal Rules of Civil Procedure.

11.    Over the course of many years, Barry personally advanced loans to the Trust to pay premiums for the Policy.

12.    In total, Barry advanced loans of more than $11 million to the Trust to fund the Policy premiums.

13.    Based on the date of Ms. Frenkel's death, the Proceeds of the Policy will be just above $6,250,000 million, leaving the Trust with significantly less funds than necessary to pay back the loans Barry advanced for premiums. The result will be a significant personal financial loss for Barry.

14.    Morris was the agent of record for the Policy.

15.    Although Morris brokered the Policy, upon information and belief he secretly purchased an assignment of all or part of a beneficiary interest in the Trust from Eva Frenkel's son and Trust beneficiary Herman Frenkel.

16.    Upon information and belief, Herman Frenkel confirmed that he engaged in the transaction to transfer his beneficiary interest in the Trust to Morris for the sum of $200,000.

17.    Because of their actual and/or potential interests in the matters at issue in this suit, Morris and Raab are properly parties to this suit.

**FIRST THIRD-PARTY CLAIM AGAINST MORRIS HERSKO AND ABRAHAM RAAB**
**Declaratory Judgment (28 U.S.C. § 2201)**

18.     Barry incorporates the allegations in paragraphs 1 through 17 as if fully restated here.

19.     SLD Insurance has sued in this action to determine the interests in the Policy and its Proceeds.

20.     Complete relief cannot be afforded without all interested parties joined.

21.     Barry seeks and is entitled to declaratory relief that the Trust is the beneficiary of the Policy and as to how the Trust property, including the Policy, is to be administered and distributed.

22.     Further, because Barry in his individual capacity loaned funds to the Trust to pay the premiums, Barry is entitled to a declaration that he is entitled, in his individual capacity, to be repaid those loans from the Trust before the Trust makes distributions.

23.     Third-party plaintiffs seek a declaration that:

   a.   The Trust is the sole beneficiary of the Policy.

   b.   The Trust is entitled to 100% of the Proceeds of the Policy.

   c.   The Trustee, Barry, shall administer and distribute the funds held in Trust, including, without limitation the Proceeds, after first repaying all funds advanced to the Trust to pay for Trust expenses during its existence.

   d.   Morris is entitled to no distributions from the Trust.

   e.   Such other and further relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Barry requests the following relief:

a. On the First Cross-Claim, a declaratory judgment as set forth in Paragraph 23 above, which is incorporated by reference as if fully set forth herein;

b. Attorneys' fees and expenses;

c. Any and all other relief to which Barry may be entitled.

Dated:  New York, New York
        September 24, 2024

Respectfully submitted,
**BLANK ROME LLP**

By: */s/ Craig Flanders*
    Craig Flanders
    1271 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 885-5016
    Facsimile: (212) 202-7510
    Craig.Flanders@BlankRome.com

    Kyle P. Brinkman
    (*pro hac vice* application to be submitted)
    1825 Eye Street NW
    Washington, DC 20006
    Telephone: (202) 420-3171
    Facsimile: (202) 420-2201
    Kyle.Brinkman@BlankRome.com

    *Counsel for Barry Hersko*
