UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITY LIFE OF DENVER INSURANCE COMPANY,<br><br>       Interpleader Plaintiff,<br><br>       -against-<br><br>ABRAHAM HERSKO and MORRIS HERSKO, as Co-Executors of the ESTATE of ISAAC HERSKO,<br><br>       -and-<br><br>BARRY HERSKO a/k/a ZEV DOV HERSKO a/k/a BAREL HERSKO, Individually and as Trustee of THE FRENKEL FAMILY TRUST Dtd 12/26/2007,<br><br>       Interpleader Defendants;<br><br>       -and-<br><br>BARRY HERSKO a/k/a ZEV DOV HERSKO a/k/a BAREL HERSKO, Individually and as Trustee of THE FRENKEL FAMILY TRUST Dtd 12/26/2007,<br><br>       Counterclaim Plaintiff,<br><br>       -against-<br><br>SECURITY LIFE OF DENVER INSURANCE COMPANY,<br><br>       Counterclaim Defendant,<br><br>       -and-<br><br>BARRY HERSKO a/k/a ZEV DOV HERSKO a/k/a BAREL HERSKO, Individually and as Trustee of THE FRENKEL FAMILY TRUST Dtd 12/26/2007,<br><br>       Crossclaim/Third Party Plaintiff,<br><br>       -against- | **MEMORANDUM & ORDER**<br>24-CV-05215 (HG) (LKE) |

ABRAHAM HERSKO and MORRIS HERSKO, as Co-Executors of the ESTATE of ISAAC HERSKO

Crossclaim Defendant,

-and-

MORRIS HERSKO and ABRAHAM RAAB, as Trustee of THE FRENKEL FAMILY TRUST Dtd 12/26/2007,

Third Party Defendants.

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Security Life of Denver Insurance Company ("SLD") filed this interpleader action pursuant to Rule 22 of the Federal Rules of Civil Procedure, seeking, among other relief, the Court's determination of the rights of Defendants, brothers Isaac and Barry Hersko, to the benefits of the life insurance policy of the late Eva Frenkel (the "Policy"), which was issued by SLD.  *See* ECF No. 1 at 7, Wherefore Clause (Complaint; "Compl.").[1]  In his answer, Defendant Barry Hersko filed, among other claims, crossclaims against his brother and co-Defendant Isaac Hersko, and a third-party complaint against Isaac's son, Morris Hersko.  *See* ECF No. 21 (Barry Hersko's Answer).  After Isaac passed away, the Court granted a motion to substitute the Co-Executors of his Estate, Morris and Abraham Hersko (together, the "Estate"), in his stead.  *See* Feb. 5, 2025, Text Order.

Before the Court is a consolidated motion filed by the Estate and Morris Hersko, in his individual capacity (together, the "Movants"), seeking to dismiss the crossclaims and third-party complaint, or alternatively, stay or dismiss the action entirely pursuant to *Colorado River Water*

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

*Conservation District v. United States*, 424 U.S. 800 (1976).  *See* ECF No. 65 (Motion to Dismiss).

For the reasons set forth below, the motion is GRANTED, and the Court dismisses this case without prejudice under the *Colorado River* abstention doctrine in light of a pending parallel case in Kings County Supreme Court:  Case No. 506590/2025, or what this decision refers to as the "Third Kings County Action."

**BACKGROUND**[2]

### I.     The Instant Action

SLD filed this interpleader action on July 26, 2024, after it received a letter from counsel for Isaac Hersko, which asserted that "Isaac is the beneficial owner of the Policy," and a competing claim filed by Barry Hersko, as Trustee of the Frenkel Family Trust (the "Trust"), indicating that the Trust, and by extension Barry, is the rightful beneficiary of the Policy.  *See* Compl. ¶¶ 15, 20–21; ECF No. 1-5 at 3 (Ex. C); ECF No. 1-7 (Ex. E); ECF No. 1-8 (Ex. F).  In light of "a real and reasonable fear of double liability or vexatious, conflicting claims against the Policy death benefit," Compl. ¶ 28, SLD brought this suit, requesting the Court's declaration of Defendants' rights in connection with the Policy, *id.* at 7, Wherefore Clause.

Shortly thereafter, on August 14, 2024, the Court granted SLD's motion to deposit $6,194,306.97, plus any accrued interest, which represents the death benefit payable under the Policy, with the Clerk of this Court for safekeeping in an interest-bearing account.  *See* ECF No. 14 (Order Granting Amended Motion to Deposit Interpleader Funds).  On September 24,

---

[2]     The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

2024, Barry Hersko filed an answer to SLD's interpleader complaint, including, as relevant here, two crossclaims against Isaac Hersko (now the Estate) and a third-party complaint against Morris Hersko.[3]  *See* ECF No. 21.

### A.    Barry Hersko's Crossclaims Against the Estate

In his first crossclaim against the Estate, Barry seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, providing that:  a "religious instrument" executed between the brothers, entitled the "Document of Confession," which indicates that they are "absolute and equal partner[s]" in certain investments, including "life insurances on other people," is "void, voidable and unenforceable by U.S. courts under the . . . First Amendment" and for other reasons; the Estate therefore has "no interest in the Policy or Proceeds" and "is not a beneficiary of the Policy"; rather, "[t]he Trust is entitled to 100% of the Proceeds of the Policy"; "[t]he Trust shall administer and distribute the funds held in Trust, including, without limitation the Proceeds, as directed by Barry as Trustee, after first repaying all funds advanced to the Trust to pay for Trust expenses during . . . its existence"; and finally, the Estate "is entitled to no distributions or payments from the Trust."  ECF No. 21 at 13, 17, 21–22.

In his second crossclaim against the Estate, Barry alleges tortious interference with the Policy.  *Id.* at 23–24.  Specifically, he asserts that by sending the letter to SLD claiming ownership of the Policy, despite knowing that the Trust is the sole beneficiary, Isaac (now the Estate) "intentionally procured SLD[]'s breach of the Policy without justification."  *Id.* at 23. According to Barry, "Isaac's letter resulted in SLD . . . refusing to pay the Trust, an actual breach of the Policy."  *Id.* at 24.  As a result, the Trust allegedly "sustained damages . . . including by

---

[3]    Barry also filed counterclaims against SLD, *see* ECF No. 21 at 9–12, which SLD challenges in its response to the instant motion, *see* ECF No. 71 at 2–3 (SLD's Response to Motion).

4

being deprived of the death benefit and by incurring costs in its instant dispute . . . and in connection with defending against Isaac's failed attempts to attach the proceeds directly." *Id.*

### B.    *Barry Hersko's Third-Party Complaint Against Morris Hersko*

Next, Barry brought a third-party complaint against his nephew, Morris Hersko, whom he alleges "secretly purchased an assignment of all or part of a beneficiary interest in the Trust from Eva Frenkel's son and Trust beneficiary Herman Frenkel." *Id.* at 26.  Barry again seeks a declaratory judgment, *see* 28 U.S.C. § 2201, declaring that:  "The Trust is the sole beneficiary of the Policy"; accordingly, "[t]he Trust is entitled to 100% of the Proceeds of the Policy"; "[t]he Trustee, Barry, shall administer and distribute the funds held in Trust, including, without limitation the Proceeds, after first repaying all funds advanced to the Trust to pay for Trust expenses during its existence";[4] and "Morris is entitled to no distributions from the Trust." *Id.* at 27.

### C.    *Discovery*

With respect to discovery in this action, the Estate indicates that it "timely served written responses and produced documents"; SLD explains that it "responded to the other parties' discovery requests and provided its document production"; but Barry advises that "[t]he parties responded to initial discovery demands and made document productions in response; however, document discovery is not substantially complete."  ECF No. 90 at 1–2 (Joint Status Report). Barry further asserts that the Estate's and SLD's productions have "[s]ubstantial deficiencies," *id.* at 2, but the Estate clarifies that "[a]t no time . . . did Barry serve any deficiency letter, raise

---

[4]    Barry asserts that because he "loaned funds to the Trust to pay the [life insurance] premiums" to the tune of $11 million, he is therefore entitled to a declaration that those loans be repaid to him "from the Trust before the Trust makes distributions."  ECF No. 21 at 26, 27.

objections to the Estate's written discovery responses, or seek Court intervention regarding document discovery," *id.* at 1.  Beyond written and document discovery, deposition discovery is stayed pending resolution of the instant motion.  *See* Apr. 30, 2025, Text Order.

## II.     State Actions[5]

Against that backdrop, the Court now turns to the relevant state actions.  Barry and Isaac Hersko, and later, the Estate of Isaac Hersko, have a long, complicated history of state court litigation.  The Movants identify three state actions in Kings County Supreme Court, which they allege are parallel to the instant action, as a basis for the Court to stay or dismiss this action in favor of state court resolution under the *Colorado River* abstention doctrine.[6]  *See* ECF No. 68 at 27–35 (Memorandum in Support of Motion).  Those state actions include:  Case No. 520492/2021 (the "First Kings County Action"); Case No. 522275/2024 (the "Second Kings County Action"); and Case No. 506590/2025 (the "Third Kings County Action").  *See* ECF No. 66 (Declaration of Melanie I. Wiener, Esq. in Support of Motion).

### A.     The First Kings County Action

On August 12, 2021, Isaac Hersko commenced the First Kings County Action against Barry Hersko and other defendants, which arose from a dispute over the brothers' "equal partners[hip] in their business dealings related to" certain real estate properties and in other "financial investment holdings," including life insurance policies, under the aforementioned "Document of Confession."  NYSCEF No. 1 ¶¶ 49, 59 (Complaint); NYSCEF No. 939 at 10

---

[5]     The Court takes judicial notice of any filings in the state court actions referenced herein. *See In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. 24-cv-7007, 2025 WL 691904, at *2 (E.D.N.Y. Mar. 3, 2025).

[6]     SLD takes the position that neither a stay nor a dismissal under *Colorado River* is warranted at this stage.  *See* ECF No. 71 at 1.

(Feb. 13, 2025, Decision and Order).  After Barry failed to file an answer, the court granted

Isaac's motion for leave to enter a default judgment against him.  *See* NYSCEF No. 246 (Apr.

21, 2022, Decision and Order).[7]  Later, following Isaac's death, Morris and Abraham Hersko, as

Co-Executors of the Estate of Isaac Hersko, moved to substitute themselves as parties, and the

court granted their motion.  *See* NYSCEF No. 939 at 12.  The court, however, dismissed the

Estate's "claims relating to businesses and investments apart from the claims relating to" the real

estate properties without prejudice to the Estate filing an action concerning its interest in Isaac's

partnership with Barry, which led to the Third Kings County Action (stay tuned).  *Id.* at 13.

Ultimately, after an inquest hearing, the court granted the Estate equitable relief with respect to

the real estate properties.  *See* NYSCEF No. 1188 (Dec. 23, 2025, Decision, Order Judgment and

Decree).

>        *B.        The Second Kings County Action*

Next, on August 19, 2024, Isaac brought the Second Kings County Action against the

above-described Trust, Barry, SLD as a nominal defendant, and another defendant, alleging that

Isaac is "an absolute and equal partner" in the Trust and in "Isaac and Barry's life insurance

policy investments," including the Policy at issue in the instant action.  NYSCEF No. 1 ¶¶ 1, 19,

32, 42–49 (Complaint).  After Isaac's death, the Co-Executors of his Estate, Morris and Abraham

Hersko, again moved to substitute themselves as parties, but this time, the court denied the

motion and dismissed the action without prejudice to the Estate "filing an action concerning the

Estate's claims to Isaac Hersko's interest in the partnership," which the Estate had already filed

in the Third Kings County Action, described below.  NYSCEF No. 52 at 3 (May 15, 2025,

---

[7]        Although the NYSCEF timestamp on this Order is dated April 27, 2022, the court dated
the Order April 21, 2022.  For the avoidance of doubt, where such discrepancies exist, the Court
uses the date indicated by the author of the document rather than the NYSCEF timestamp.

Order).  After the Estate moved to renew the substitution motion, the court stayed the motion pending this Court's determination of the instant motion.  *See* NYSCEF No. 69 (Oct. 22, 2025, Order).

> ### C.      The Third Kings County Action

Finally, on February 25, 2025, the Estate sued Barry in the Third Kings County Action, alleging that the brothers "were equal partners in the businesses of, among other things, making loans and investing in assets, such as life insurance policies," under the Document of Confession. NYSCEF No. 2 ¶¶ 1, 11, 14, 29 (Complaint).  Despite this alleged partnership, the Estate claims that Barry withdrew more than his fair share from the brothers' joint accounts and refused to reveal the whereabouts of those funds.  *Id.* ¶¶ 21–22.  Accordingly, the Estate seeks "an accounting of the [partnership] interests and assets" in "any partnership Account to date" and the "distribution . . . of Isaac's share of those interests and assets," which is supposedly 50%, to the Estate.  *Id.* ¶¶ 3, 13, Wherefore Clause.

On March 27, 2025, Barry filed an answer with affirmative defenses.  *See* NYSCEF No. 10 (Answer).  A few days later, on March 31, 2025, counsel for the Estate filed a notice of deposition for Barry and designated May 6, 2025, as the deposition date.  *See* NYSCEF No. 13 (Notice to Take Videotaped Deposition).  And on February 25, 2026, the court imposed a discovery schedule, with written discovery beginning this month, *see* NYSCEF No. 37.

## LEGAL STANDARD

"A motion to dismiss or stay based on the *Colorado River* abstention doctrine is assessed under the same standard as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. 24-cv-7007, 2025 WL 691904, at *2 (E.D.N.Y. Mar. 3, 2025).  In

8

considering a Rule 12(b)(1) motion, the court generally "must accept as true all material factual allegations in the complaint." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). However, "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). To resolve a jurisdictional issue, the court may refer to "affidavits and other materials beyond the pleadings," *J.S.*, 386 F.3d at 110, and "take judicial notice of documents in the public record, including state court filings," *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, 2025 WL 691904, at *2.

## DISCUSSION

In *Colorado River Water Conservation District v. United States*, the Supreme Court held that a federal court may decline to exercise jurisdiction where a parallel state court proceeding could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. 424 U.S. at 817–18; *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). Although such abstention is warranted only in "exceptional" circumstances, with "[o]nly the clearest of justifications," those circumstances "do nevertheless exist." *Colorado River Water Conservation Dist.*, 424 U.S. at 818.

The *Colorado River* analysis requires two steps.[8] First, the court must determine "whether the state and federal actions are indeed parallel, or in other words, that substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Riggi*, 777 F. Supp. 3d at 362. A mirror image or "perfect symmetry of parties and issues is not

---

[8]     "Whether the party seeking abstention requests a stay or outright dismissal makes no difference to the analysis." *Riggi v. Charlie Rose Inc.*, 777 F. Supp. 3d 356, 362 (S.D.N.Y. 2025). Here, the Movants request either a dismissal or a stay.

required," so long as "there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Id.* (emphasis in original).

Second, if the court concludes that the cases are parallel, it then considers the following six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk Power Corp.*, 673 F.3d at 100–01. Consideration of these factors is more art than science. It does not call for "a mechanical checklist," but rather "a careful balancing of the important factors as they apply in a given case." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16. No factor alone "is necessarily determinative," *Colorado River Water Conservation Dist.*, 424 U.S. at 818, and the weight given "any one factor may vary greatly from case to case, depending on the particular setting of the case," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16. For example, in *Colorado River* itself, which involved water rights, the Court found that the "[t]he most important" factor was the "clear federal policy" to avoid "piecemeal adjudication of water rights in a river system." *Colorado River Water Conservation Dist.*, 424 U.S. at 819. In sum, courts should conduct this balancing test "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21.

**I.        Whether Abstention under the *Colorado River* Doctrine is Appropriate**

Applying those principles here, the Court finds that exceptional circumstances warrant abstention. Because the First and Second Kings County Actions appear to be dismissed,[9] and in any event, the Court finds a sufficient basis to abstain based on the Third Kings County Action alone, the Court limits its abstention analysis to the Third Kings County Action.

*A.        Whether this Action and the Third Kings County Action are Parallel*

The Court begins, as it must, with the threshold inquiry: whether the instant action and the state action, the Third Kings County Action, are parallel. Because these actions share the same core parties, issues, and relief sought, and because there is a substantial likelihood that the state action will resolve the issues at the heart of the instant action, the Court concludes that they are.

Recall that in this action, Interpleader Plaintiff SLD sued brothers Barry and Isaac Hersko after they each filed competing claims of ownership over the proceeds of the Policy SLD issued on the life of Eva Frenkel. *See generally* Compl. To avoid the possibility of "double liability or vexatious, conflicting claims against the Policy death benefit," *id.* ¶ 28, SLD sought a declaration of "the rights of the Defendants to the death benefit due and owing under" the Policy, *id.* at 7, Wherefore Clause. As discussed *supra*, after Isaac passed away, the Court substituted Morris and Abraham Hersko, the Co-Executors of Isaac's Estate, as parties. *See* Feb. 5, 2025, Text Order.

---

[9]        As a reminder, the Court notes that the Second Kings County Action is nearly identical to this case, as it involves the same parties and the same specific dispute—the Estate's interest in the proceeds from the Policy at issue here. *See* NYSCEF No. 1. And although the Second Kings County Action is currently dismissed, the court stayed the Estate's motion to renew its request to substitute itself for Isaac as a party, pending this Court's determination of the instant motion. *See* NYSCEF No. 69.

Also in this action, Barry Hersko filed crossclaims against the Estate, seeking, among other relief, a declaration that the Document of Confession, the above-described document executed by the brothers indicating that they are "absolute and equal partner[s]" in certain investments, including "life insurances on other people," is "void, voidable and unenforceable," and therefore the Estate has "no interest in the Policy or Proceeds" and "is not a beneficiary of the Policy."  ECF No. 21 at 17, 21–22.

Meanwhile, in the state action, Morris and Abraham Hersko, again in their capacities as Co-Executors of the Estate of Isaac Hersko, sued Barry Hersko, alleging that under that same Document of Confession, the brothers "were equal partners in the businesses of, among other things, making loans and investing in assets, such as life insurance policies."  NYSCEF No. 2 ¶¶ 1, 11, 14, 29.  The Estate asserts that Barry has withdrawn more than his fair share of the brothers' joint funds, *id.* ¶ 21, and it therefore seeks an accounting of all of their shared interests and assets, and the distribution of Isaac's share of those funds to the Estate, *id.* ¶¶ 3, 13, Wherefore Clause.

Both cases, then, present the same core question—who is the rightful owner of the brothers' joint assets, including the Policy at issue here?—which in turn requires a determination as to whether the Document of Confession is enforceable.[10]  To be sure, these cases aren't a

---

[10]    In the Third Kings County Action, Barry asserts as an affirmative defense that the state court cannot enforce the Document of Confession because it is an "ecclesiastical instrument" over which the court lacks jurisdiction.  *See* NYSCEF No. 10 at 10 (Third Affirmative Defense). Barry, effectively, seeks the same relief here by asserting a crossclaim requesting a declaration that the Document of Confession is unenforceable because of its religious nature.  *See* ECF No. 21 at 21 ¶ 57(a).  The crossclaim seeks additional declaratory relief which likewise mirrors some of the affirmative defenses asserted by Barry in the Third Kings County Action.  *Compare* NYSECF No. 10 at 11 (Fourth Affirmative Defense claiming that the Document of Confession is unenforceable based on fraud, duress, and undue influence), *and id.* (Fifth Affirmative Defense arguing the same based on lack of consideration), *with* ECF No. 21 ¶ 57(b)(ii) (crossclaim

perfect match (though "perfect symmetry" is not the standard, *Riggi*, 777 F. Supp. 3d at 362). The scope of the state action, in which the Estate seeks to divide the entire "pie," so to speak, is clearly broader than the scope of this action, which involves only one slice of the proverbial pie—a single life insurance policy.  But that only militates in favor of finding parallelism, because it means "there is a substantial likelihood that the state litigation" will resolve the issues underlying SLD's claim.  *Id.*  And although SLD itself is not a party to the state action, it brought this action for the sole purpose of determining whether the Estate or Barry is the rightful beneficiary of the Policy,[11] which the state court will necessarily determine.

For these reasons, the Court finds that this case and the Third Kings County Action are parallel actions.

### B.    Whether the Colorado River Factors Weigh in Favor of Abstention

Next, the Court carefully balances the *Colorado River* factors as they apply in this case. The first factor—whether one of the courts has assumed jurisdiction over the property involved in the dispute—weighs against abstention.  That is, this Court is holding the sum of the death benefit payable under the Policy in an interest-bearing account during the pendency of this litigation.  *See* ECF No. 14.  The second factor—whether the federal forum is more convenient

---

seeking a declaration that the Document of Confession is unenforceable for lack of consideration), *id.* at 21 ¶ 57(b)(v) (seeking the same because the Document of Confession was "procured by fraud"), *and id.* at 22 ¶ 57(b)(vi) (same based on duress).

[11]    SLD's role in this action is minimal, and it even asks the Court to "excuse [it] from further attendance upon this cause and dismiss [it] from this case, with prejudice."  Compl. at 7, Wherefore Clause.

for the parties than the state forum—is neutral and therefore weighs against abstention.[12]  Indeed, this Court is a short walking distance from its neighbor, the Kings County Supreme Court.

"By far the most important factor," the third factor—whether abstention will avoid piecemeal litigation—weighs heavily in favor of abstention.  *TD Bank, N.A.*, 760 F. Supp. 3d at 93.  "Avoiding piecemeal litigation is a paramount consideration when a failure to abstain may result in inconsistent dispositions that would breed additional litigation on assertions of claim and issue preclusion."  *Id.* at 93–94.  Piecemeal litigation is generally "of great concern where the lawsuits pose a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel."  *Id.* at 94.

Here, the risk of piecemeal litigation is serious.  If this Court makes a determination on the rightful beneficiary of the Policy in the instant action, and SLD distributes the proceeds accordingly, only for the state court to subsequently make a different determination about the division of the brothers' assets, those inconsistent judgments will result in potentially irreparable harm and additional litigation.  And because the issues and claims in this action and the state action are similar but not identical, the "risk of inconsistent outcomes" would not necessarily be "preventable by principles of res judicata and collateral estoppel."  *TD Bank, N.A.*, 760 F. Supp. 3d at 94.

The fourth factor—the order in which the actions were filed, and whether proceedings have advanced more in one forum than the other—counsels slightly against abstention.  This action was filed on July 26, 2024, and the state action was filed on February 25, 2025, seven months later.  This factor "should not be measured exclusively by which complaint was filed

---

[12]     "Where a *Colorado River* factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it."  *Niagara Mohawk Power Corp.*, 673 F.3d at 101.

first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21.  There has been more progress in this case, in which the parties have engaged in written and document discovery (but according to Barry, "document discovery is not substantially complete," ECF No. 90 at 2).  However, because deposition discovery is stayed, *see* Apr. 30, 2025, Text Order, this case has not progressed as substantially as a typical case of its age.  In the state action, written and document discovery are in their infancy,[13] *see* NYSCEF No. 37, but deposition discovery appears to have commenced, at least to the extent that a deposition has been noticed, *see* NYSCEF No. 13.[14]  Therefore, this factor weighs against abstention, but only marginally.

The fifth factor—whether federal law provides the rule of decision—favors abstention. "[A]lthough the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where the bulk of the litigation would necessarily revolve around the state-law . . . rights of numerous . . . parties." *De Cisneros v. Younger*, 871 F.2d 305, 309 (2d Cir. 1989). And while garden-variety state law claims do not necessarily tip the scales in favor of abstention, "state law issues [that] are novel or particularly complex" do.  *TD Bank, N.A.*, 760 F. Supp. 3d at 95.  Here, the federal action exclusively involves quintessential state law claims—contract

---

[13]    However, given the overlapping parties and issues in this case and the state case, the written and document discovery that has occurred in this case presumably is of equal value to the state case.  And because the discovery schedule in the state action is not limited to written and document discovery, *see* NYSCEF No. 37, the state case is effectively in a similar position as this case.

[14]    The Court is unclear whether the deposition of Barry Hersko scheduled for May 6, 2025, actually took place.

15

claims, trusts and estates—and the parties' related rights.[15]  Although the claims themselves are

neither novel nor complex, they involve an extremely complex litigation history of related cases

in Kings County, which militates towards abstention.  *See Lawrence Moskowitz CLU. Ltd. v.

ALP, Inc.*, No. 19-cv-3868, 2020 WL 1503558, at *8 (S.D.N.Y. Mar. 30, 2020) (finding "[t]he

absence of questions of federal law counsel in favor of abstention" where "the state law issues,

while not novel, appear[ed] to involve an extensive factual record, which overlap[ped] at least

somewhat with other actions involving multiple other parties, and which has spawned multiple

other cases already proceeding in state court before a single judge").[16]

The sixth and final factor—whether the state court can adequately protect the plaintiff's

federal rights—also weighs in favor of abstention.  Because Kings County Supreme Court has a

deep history with the Estate of Isaac Hersko and Barry Hersko, and because the Estate in the

Third Kings County Action requests a full accounting and distribution of the brothers' shared

assets, the state court is uniquely positioned to accurately answer SLD's question:  who is

entitled to the proceeds of the Policy?  Moreover, SLD "can seek the very same declaratory and

equitable relief [it] seeks in this case in the state proceedings," *Bernstein v. Hosiery Mfg. Corp.*

---

[15]    Barry argues that "federal law supplies the rule of decision" through the "interpleader relief SLD seeks and Barry's crossclaim against the Estate," ECF No. 75 at 30 (Memorandum in Opposition to Motion)—specifically, his request for a declaration that the Document of Confession, a "religious instrument," is "void, voidable and unenforceable by U.S. courts under the . . . First Amendment," ECF No. 21 at 13, 21.  However, the Court finds this argument to be unpersuasive because "the bulk of the litigation . . . necessarily revolve[s] around the state-law . . . rights of numerous . . . parties."  *De Cisneros*, 871 F.2d at 309.

[16]    Here, the Third Kings County Action was assigned to Justice Wayne Saitta, the same justice who presided over the First and Second Kings County Actions, given "the deep relationship between the parties and the complex history."  NYSCEF No. 34 (Jul. 23, 2025, Decision and Order on Motion).  And, even after Justice Saitta's retirement, the case has been reassigned to Justice Cenceria Edwards, "who is handling related cases."  NYSCEF No. 36 (Feb. 5, 2026, Letter).

*of Morganton*, 850 F. Supp. 176, 185 (E.D.N.Y. 1994), either by seeking to join the Third Kings County Action pursuant to the New York Civil Practice Law and Rules ("CPLR"), or by initiating a separate interpleader action in Kings County under the CPLR and moving to consolidate that action with the Third Kings County Action.

As the outcome of the instant action depends on the accounting and distribution of the joint assets at issue in the Third Kings County Action, and in light of the deep, convoluted history in Kings County of these parties and their partnership dispute, which is rooted in state law, the Court concludes that the third, fifth, and sixth *Colorado River* factors outweigh the remaining factors in this case. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16 ("The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."); *Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 52–53 (2d Cir. 2020) (affirming abstention where, as here, three *Colorado River* factors weighed in favor of abstention and three weighed against abstention, reasoning that "consideration of the factors is not a mechanical counting exercise" and "[t]he district court acted well within the bounds of its discretion in weighting the danger of piecemeal litigation factor more strongly than others"). Therefore, despite the Court's recognition of its "virtually unflagging obligation" to exercise its jurisdiction, *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 360 (2d Cir. 1985), the Court finds that in this particular case, the *Colorado River* factors favor abstention, and exceptional circumstances and clear justifications warrant that outcome, *see Colorado River Water Conservation Dist.*, 424 U.S. at 818.[17]

---

[17]    The tortured litigation history among Defendants in this case raises the question of whether "the vexatious or reactive nature" of this action provides an additional basis for abstention. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n.20; *see Lawrence Moskowitz CLU Ltd.*, 830 F. App'x at 53 ("The Supreme Court has suggested that [the vexatious and reactive

17

**II.      Whether a Dismissal or a Stay Under the *Colorado River* Doctrine is Appropriate**

"The decision whether to stay or dismiss a federal suit under the *Colorado River* doctrine is committed to the discretion of the district court." *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986).  Abstention under the *Colorado River* doctrine "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28; *see also Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 77 (2d Cir. 1996) ("There is no difference between a stay and a dismissal for purposes of the *Colorado River* doctrine.").  Here, considering "conservation of judicial resources and comprehensive disposition of litigation," *Colorado River Water Conservation Dist.*, 424 U.S. at 817, the Court determines that a dismissal, rather than a stay, is appropriate, *see Pappas Harris Cap., LLC v. Bregal Partners, L.P.*, No. 20-cv-6911, 2021 WL 3173429, at *12 (S.D.N.Y. July 27, 2021) (concluding the same).

## CONCLUSION

For the reasons described herein, the Movants' motion is GRANTED, and this case is dismissed without prejudice under the *Colorado River* abstention doctrine.  The Clerk of Court is respectfully directed to enter judgment consistent with this Order, close this case, and disburse to Interpleader Plaintiff Security Life of Denver Insurance Company the sum of $6,194,306.97,

---

nature of the litigation] may be considered.").  However, the Court need not address that inquiry given the strength of the third, fifth, and sixth *Colorado River* factors in favor of abstention.

18

plus any accrued interest, that was deposited with this Court and held in an interest-bearing account.  *See* ECF No. 14.

SO ORDERED.

/s/ *Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated:  Brooklyn, New York
March 30, 2026

19